IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PARADISE POINT, LLC**, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Civil Nos. **PJM 19-1035** |
| | * **PJM 19-3437** |
| **PRINCE GEORGE'S COUNTY**, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

In this proceeding, Plaintiffs Paradise Point LLC, Chris Brusznicki, Geoffrey Polk, and Thornton Mellon LLC have filed Motions for Summary Judgment, ECF. Nos 26 and 27, and Defendant Brian Frosh, Attorney General of the State of Maryland, has filed a Cross-Motion for Summary Judgment, ECF No. 30.

All Motions are **GRANTED** in that the Court holds certain aspects of Md. Code Ann., Tax-Prop. § 14-817(d) in violation of the Privileges and Immunities Clause of the U.S. Constitution. Otherwise, all Motions are **DENIED**.

### I.

This case involves the process by which Prince George's County collects delinquent property taxes. The central statutory provision at issue is § 14-817(d) of Maryland's Tax-Property Article which requires Prince George's County to hold a "limited auction" selling the properties in advance of its traditional public auction. Md. Code Ann., Tax-Prop. § 14-817(d). The jugular

question is whether the provision, which grants priorities to certain classes of bidders, is unconstitutional.

In the traditional public auction, participants bid on tax-delinquent properties and the highest bidder receives a certificate that serves as a conditional option to acquire the property. § 14-818. After the auction, the owner of the delinquent property still has the opportunity to redeem the property by paying off the delinquency and the certificate-holder's expenses with interest. *Id.* After six months without the redemption occurring, the certificate-holder has the option to foreclose on the owner's right of redemption and take title of the property. § 14-833(a)(1). If the certificate-holder fails to exercise the right of foreclosure within two years of the date of the certificate, the certificate expires. § 14-833(c)(1); *see Quillens v. Moore*, 923 A.2d. 15, 24-25 (2007) (summarizing tax sale process).

During the 2017 legislative session, the Maryland General Assembly enacted House Bill 1573, which required Prince George's County to hold a limited auction before the regularly scheduled public auction. For purposes of this case, the principal difference between the limited auction and the public auction, just described, is that the limited auction is not open to the general public. Instead, participation is limited to ten classes of individuals, namely people who are:

(i) employed in a public school located in Prince George's County;
(ii) employed by the Prince George's County Police Department;
(iii) employed by the Prince George's County Fire Department;
(iv) employed by the Prince George's County Office of the Sheriff;
(v) employed by the Prince George's County Department of Corrections;
(vi) employed by the Prince George's County government in a position not included under item (i), (ii), (iii), (iv), or (v) of this paragraph;
(vii) employed by the federal government;
(viii) employed by a municipal government in Prince George's County;
(ix) a veteran of any branch of the armed forces of the United States who has received an honorable discharge; or
(x) a resident of Prince George's County.

Md. Code Ann., Tax-Prop. § 14-817(d)(3). Unlike public auction tax-sale certificates, certificates acquired at the limited auction "may not be assigned to another person." § 14-821(b) Furthermore, if a participant in the limited auction purchases a certificate for a property that is "vacant and unfit for habitation," she may foreclose the owner's right of redemption immediately, without having to wait the six months required by the public auction. Tax-Prop. § 14-833(h).

## II.

On April 5, 2019, Plaintiff Paradise Point, an LLC that participates in Prince George's County's public auction but does not qualify to participate in its limited auction, filed suit seeking a preliminary injunction and a declaration that the limited auction violated (a) the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, (b) the Privileges and Immunities Clause of Article IV of the U.S. Constitution, (c) the Takings Clause of the Fifth Amendment to the U.S. Constitution, and (d) Article 24 of the Maryland Declaration of Rights. *Paradise Point, LLC v. Prince George's County et al.* (Civ. No. 19-1035). Suit was initially brought against Prince George's County and Stephen McGibbon, the Acting County Tax Collector, but was later amended to add the State of Maryland as a Defendant.

A few months later, on August 29, 2019, Plaintiffs Chris Brusznicki, Geoffrey Polk, and Thornton Mellon LLC (the *Brusznicki* case) filed a complaint against Prince George's County in the Circuit Court for Prince George's County. *Brusznicki, et. al. v. Prince George's County, et. al.* (Civ. No. 19-3437). The *Brusznicki* plaintiffs sought a declaratory judgment holding the limited auction unconstitutional on the grounds that it (a) violated the Privileges and Immunities Clause and as well, b) placed an unreasonable restraint on the alienation of property. Plaintiffs asked the Court to enjoin the County from holding the limited auction, pending the Court's ruling in their constitutional challenge.

Plaintiff Polk, a citizen of Illinois, asserted that he was repeatedly informed by the Prince George's County Tax Sale Office that he was not eligible to participate in the limited tax auction because he was neither a resident of Prince George's County, nor did he fit any of the other classes of eligible parties. Polk stated he would have participated in the limited auction had he been allowed. Plaintiff Brusznicki, also a resident of the State of Illinois and an honorably discharged member of the United States Army, in fact participated in the limited auction based on his status as a veteran. He purchased nine property tax liens in the limited auction and attempted to assign one of the tax liens to Plaintiff Thornton Mellon LLC, a Maryland LLC engaged in the business of purchasing tax lien certificates offered for sale by the State of Maryland. Pursuant to Md. Code Ann., Tax-Prop. § 14-821(b), Prince George's County refused to honor the assignment of the tax lien to the LLC.

The *Paradise Point* suit was filed directly to this Court; the *Brusznicki* suit began in the Circuit Court for Prince George's County and was removed here. On January 1, 2020, the *Paradise Point* and *Brusznicki* cases were consolidated. Post-consolidation, Plaintiffs moved for Summary Judgment, and the State, through Attorney General Frosh, cross-moved for Summary Judgment. Plaintiffs initially alleged that the limited auction statute violated (1) the Privileges and Immunities Clause of the U.S. Constitution, (2) the Equal Protection Clause of the Fourteenth Amendment, (3) the Takings Clause of the Fifth Amendment, and that the statute (4) constituted an impermissible restraint on the alienation of property.[1] However, at oral argument, held virtually, Plaintiffs clarified that their Motions for Summary Judgment most directly implicated the

---

[1] Prince George's County and McGibbon take no position as to the constitutionality of the statute or indeed any of the Motions for Summary Judgment.

Privileges and Immunities Clause of Article IV of the U.S. Constitution, and in fact were relying solely on that claim.[2]

### III.

Under Federal Rule of Civil Procedure 56(a), the district court will grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In reviewing the motion for summary judgment, the court draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the motion is properly made and supported, the opposing party has the burden of demonstrating that a genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. When reviewing cross-motions for summary judgment, each motion is to "be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

### IV.

The Privileges and Immunities Clause of the U.S. Constitution states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

---

[2] In its Motion for Summary Judgment, Paradise Point did not brief the Equal Protection Clause or Takings Clause claims and failed to file a reply in support of its Motion or a response to Attorney General Frosh's Cross-Motion. The *Brusznicki* Plaintiffs failed to defend their restraint on alienation claim in their reply or response to Attorney General Frosh's Cross-Motion. Accordingly, the Court holds that those arguments are waived. At oral argument, the *Brusznicki* Plaintiffs asserted that if the statute was found to be constitutional under the Privileges and Immunities Clause, the statute would nevertheless constitute an impermissible restraint on alienation of property. To the extent they have not waived that particular claim, it is unnecessary to engage in a restraint on alienation analysis since, as will be discussed, the Court finds the statute unconstitutional in at least some respects.

U.S. Const. art. IV, § 2, cl. 1. The provision was designed "to help fuse into one Nation a collection of independent, sovereign States," *Toomer v. Witsell*, 334 U.S. 385, 395 (1948), and to "constitute the citizens of the United States [as] one people,' by 'plac[ing] the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296 (1998) (quoting *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1869)). While the protections afforded to nonresidents who enter a State are "not 'absolute,' . . . the Clause 'does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.'" *Saenz v. Roe*, 526 U.S. 489, 502 (1999) (quoting *Toomer*, 334 U.S. at 396). The "fact that the ordinance . . . is a municipal, rather than a state, law does not somehow place it outside the scope of the Privileges and Immunities Clause," and an "ordinance is not immune from constitutional review at the behest of out-of-state residents merely because some in-state residents are similarly disadvantaged." *United Bldg. & Const. Trades Council of Camden Cnty. & Vicinity v. Major & Council of City of Camden*, 465 U.S. 208, 214, 218 (1984).

### A.

Corporations are not authorized to bring suit under the Privileges and Immunities Clause because it protects "[c]itizens" and the Supreme Court has held that corporations are not "[c]itizens" within the meaning of the Clause. *Tenn. Wine and Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2460-61 (2019). ("[T]he Privileges and Immunities Clause has been interpreted not to protect corporations[.]") Accordingly, Attorney General Frosh is entitled to summary judgment on the claims of Plaintiffs Paradise Point.

### B.

The claims of Plaintiffs Polk, Brusznicki, and Thornton Mellon LLC remain.

Insofar as nonresident individuals are concerned, the Privileges and Immunities Clause requires the court to consider whether a State has discriminated against nonresidents with regard to the privileges and immunities it accords to its own or presumably any citizens, and if so, whether there is sufficient justification for the discrimination. The remaining parties agree that a two-step test determines whether there has been a violation of the Privileges and Immunities protection. "First, the activity in question must be 'sufficiently basic to the livelihood of the Nation . . . as to fall within the purview of the Privileges and Immunities Clause' . . . Second, if the challenged restriction deprives nonresidents of a protected privilege, [the court] will invalidate it only if [it] conclude[s] that the restriction is not closely related to the advancement of a substantial state interest." *Sup. Ct. of Va. v. Friedman*, 487 U.S. 59, 64-65 (1988).

### 1. Fundamental Right

To determine whether an activity is a right worthy of the protection of the Privileges and Immunities clause, it must be "sufficiently basic to the livelihood of the Nation" that it constitutes a fundamental right. *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978). Included among these rights are the right to own and dispose of property, *Blake v. McClung*, 172 U.S. 239 (1898); the right to access to the courts of the State, *Canadian Northern R. Co. v. Eggen*, 252 U.S. 553 (1920); and the right to pursue a common calling within the State, *Ward v. Maryland*, 79 U.S. (12 Wall.) 418 (1871).

While the parties spend considerable time debating whether the ability to participate in the limited auction at issue here constitutes an infringement on the right to pursue a common calling, the Court finds their framing of the fundamental right both misdirected and irrelevant. The limited auction allows select participants to bid on tax-delinquent properties and then gives the highest

bidder a certificate that serves as a conditional option to buy the property if the current owner of the delinquent property does not redeem the property within a prescribed time frame. In other words, this case is not about the right to pursue a common calling; fundamentally, it is about the right to acquire property in Prince George's County.

From the earliest interpretation of the Privileges and Immunities Clause, it has been established that the right to the ownership of privately held property is a fundamental right protected by the provision. *Corfield v. Coryell,* 6 F. Cas. 546 (No. 3,230) (CCED Pa. 1823). The "States may not interfere with the 'right of a citizen of one state to . . . take, hold and dispose of property, either real or personal.'" *Baldwin,* 436 U.S. at 383 (quoting *Corfield,* 6 F. Cas., at 552). Here, it is inescapably clear that the limited auction burdens the ability of nonresidents to engage in the fundamental right of acquiring property within the state.

### 2. Substantial State Interest

Even if a statute deprives nonresidents of a fundamental right, it will be upheld if (i) "substantial reasons exist for the discrimination," and (ii) "the degree of discrimination bears a close relation to such reasons." *Friedman,* 487 U.S. at 67. "Every inquiry under the Privileges and Immunities Clause 'must . . . be conducted with due regard for the principle that the states should have considerable leeway in analyzing local evils and in prescribing appropriate cures.'" *United Bldg.,* 465 U.S. at 222-23 (quoting *Toomer,* 334 U.S. at 396). The burden of justification is upon the State; the statute is not given an ordinary presumption of constitutionality. *Hicklin v. Orbeck,* 437 U.S. 518, 526-28 (1978).

In this case, the State cites community-revitalization, by implication in Prince George's County, as the justification for discriminating against nonresidents; that is, the *raison d'etre* of the statute is to boost home ownership, improve neighborhoods, and address vacant properties by

giving those with the greatest stake in municipal improvement an inside track to purchase properties offered for sale.

The Court finds this justification sufficiently compelling insofar as actual residents of or workers in the County are concerned. Indeed, in a previous case, a judge of this District found that the tax sale process reflects the government's "significant interest in combating abandonment of properties, especially in urban areas, and in securing for its citizens the revenue necessary to carry out important government functions." *Sallie v. Tax Sale Invs., Inc.*, 998 F. Supp 612, 618-19 (D. Md. 1998).

But wait! As the TV pitchman says, "there is more."

The Court must also decide whether the discrimination practiced against nonresidents bears a substantially close relationship to the reason proffered by the State. Here, the Court must consider "whether, within the full panoply of legislative choices otherwise available to the State, there exist alternative means of furthering the State's purpose without implicating constitutional concerns." *Friedman* 487 U.S. at 67. Here, the State suggests that it discriminates against certain classes of out-of-state residents because those classes purportedly do not share the same incentives to pursue community revitalization goals as do the eligible classes, but rather, says the State, the nonresidents see it as a pure investment opportunity.

As indicated, if the limited auction were open only to those residing in or working in or for Prince George's County, the statute would clearly have a substantial relationship to the Prince George's declared objectives. But some of the classes of individuals eligible to purchase in the limited auctions are veterans and federal employees, <u>wherever in the world they might be located</u>, even if they have no interest at all in making improvements on Prince George's County properties

- 9 -

or moving in the County, and—indeed—even if their one and only desire is to invest in County property (which other classes of nonresidents are effectively excluded from doing).

The Court examines the State's rationale as to these favored categories of nonresidents.

### a. <u>Veterans</u>

Turning first to veterans:

This group, to be sure, has traditionally been a favored lot. "Our country has a long standing policy of compensating veterans for their past contributions by providing them with numerous advantages," such as by providing preferences in civil service employment, guarantees for home loans, lesser tax burdens, and special educational benefits. *See Regan v. Tax'n with Representation of Wash.*, 461 U.S. 540, 551, N. 09 (1983). But the problem with the statute before the Court is that the State's assumption seems to be that, if veterans as a class are given a benefit, – any benefit – the sky is the limit. In *Hooper v. Bernalillo County Assessor*, 472 U.S. 612 (1986), the Supreme Court did say, "the various preferences for veterans are grounded in a '[d]esire to compensate in some measure for the disruption of a way of life . . . and to express gratitude.'" *Id.* at 620 (quoting *Russel v. Hodges,* 470 F.2d 212, 217 (2d Cir. 1972)). But does that mean that mean that, when benefits are provided to veterans, anything goes? In the present case, the State, by truncating the words of the case it cites (one hopes not disingenuously), submits that "veterans' preferences" have withstood constitutional challenges. *White v. Gates,* 253 F.2d 868, 869 (D.C. Cir. 1958). In fact, the predicate for the clause in *White* is "employment preferences" for veterans, not preferences for veterans in general (The full quote is "Veterans' preference in federal employment has been an established policy of Congress for many years . . . The Supreme Court and other courts have enforced it, and have done so without suggesting any possible constitutional difficulty." *Id.* at 869.)

The Court concludes that there must be at least some reasonable limit to the extent veterans may be made beneficiaries of governmental advantage. Indeed, even among various classes of veterans, distinctions are permitted. Compare Maryland's property tax exemptions provided only for veterans who are totally disabled, Md. Code Ann., Tax-Prop. § 7-208, with the Supreme Court case distinguishing among benefits accorded to veterans by the State of New Mexico. *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 621-22. But, one might ask, could any government – federal or state – simply decree that all veterans (without making distinctions among them) be given high-paying tax-free jobs, tax-free housing, weekly groceries at no cost, and chauffeur-driven automobiles? No one could plausibly argue that. Yet, that appears to be the thrust of the State's argument as to eligibility of all veterans around the world to purchase tax-sale property in Prince George's County.

The organizing principle as to when and how veterans' benefits may be limited is not easy to extract but perhaps it comes to this: Giving veterans priorities in accessing certain opportunities in recognition of their sacrifices for the country, and also to make up for the time they lost in everyday pursuits while serving (i.e. – jobs, loans, educational opportunities and the like), without outright excluding non-veterans from participating in similar opportunities, may be justifiable.

But giving nonresident veterans (all of them everywhere) the right to buy up distressed property in Prince George's County cheaply and to do so perhaps only as investments, while excluding nonveterans everywhere from such entitlement, is a bridge too far. The Prince George's County statute is totally unrelated to any sacrifice they might have made as veterans. This is particularly true where the justification cited by the State for favoring other beneficiaries of the County's tax sale program – current residents of Prince George's County and individuals who work in the County – is that those individuals are more likely to make improvements on the

distressed properties in the County. Yet there is simply no reason to believe that a veteran, living in North Dakota or Timbuktu, for that matter, might be similarly disposed to buy, then upgrade, Prince George's County property, much less consider moving there.

The Privilege and Immunities Clause demands a more compelling showing by a government than the State has offered here.

### b. Federal Employees

The same rationale applies as to federal employees – again the statute applies to any and all federal employees wherever they might live or work, in a distant State or even a distant country. As with veterans the world over, this class of individuals also has no particular reason to want to renovate property in Prince George's County or to move there any more than any other individual living elsewhere might have. While there might be a sensible basis for limiting the class of eligible federal employees (or veterans) to those living in Prince George's County or perhaps even to those living or working in the Maryland-District of Columbia-Virginia region—all individuals who might be more likely inclined to fix up or move into property in Prince George's County—that is not the case at bar.

The Court finds that as to Prince George's County's inclusion in County tax-sales of all veterans and all federal employees the world over, to the exclusion of all non-veterans and all non-federal employees the world over, has no adequate justification. It awards benefits to certain classes of citizens of the several States, while denying similar benefits to other citizens of the several States. The Court finds the State has failed to satisfy the Privileges and Immunities Clause of the U.S. Constitution.

### C.

The question remains whether veteran and federal employee classes are severable from the rest of the statute, such that, without them, the statute is still viable. The Court concludes that they are. "State law . . . governs determination of severability of a state statute." *Muller v. Curran*, 889 F.2d 54, 57 (4th Cir. 1989) (citing *Exxon Corp v. Hunt*, 475 U.S. 355, 376 (1986)). Maryland Code has a general severability provision which provides that, unless stated otherwise, "the provisions of all statutes enacted after July 1, 1973, are severable." Md. Code Ann., Gen. Provisions § 1-210(a). It also adds that "the finding by a court that part of a statute is unconstitutional or void does not affect the validity of the remaining portions of the statute, unless the court finds that the remaining valid provisions alone are incomplete and incapable of being executed in accordance with the legislative intent." Md. Code Ann., Gen. Provisions § 1-210(b). In respect of the limited tax auction statute, there is no indication that provisions were intended to be inseverable. Furthermore, severing veterans and federal employees from the favored classes of eligible purchasers does not render the remaining provisions of the statute incomplete or incapable of being executed in accordance with the legislative intent.

As appropriately trimmed, therefore, Md. Code Ann., Tax-Prop. § 14-817(d) remains valid.[3]

## CONCLUSION

All Motions are **GRANTED** in that the Court holds certain aspects of Md. Code Ann., Tax-Prop. § 14-817(d) in violation of the Privileges and Immunities Clause of the U.S.

---

[3] This includes the prohibition of the assignment of claims by a person eligible to participate in the limited auction. Therefore, Plaintiff Brusznicki's attempted assignment of a certificate of title to Plaintiff Thornton Mellon LLC is prohibited by the statute.

Constitution. Those two classes of eligible bidders are therefore **STRICKEN** from the statute. Otherwise, all Motions are **DENIED**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

May 19, 2021

- 14 -